## EDWARDS v. MILLER.

No. 1390. Opinion Filed December 12, 1911.

(120 Pac. 996.)

1. **APPEAL AND ERROR**—Review—Questions of Fact. It is a well-settled rule of this court that, where the evidence on a material fact is conflicting, this court will not review the same to ascertain where the weight lies, and where there is evidence tending reasonably to support the verdict, the same will not be disturbed on appeal.

2. **BILLS AND NOTES**—Action on Note—Answer. Allegations of answer examined and held to state a good defense in fraud and deceit.

3. **SAME**—Defenses—Fraud—Evidence. Evidence in this case examined, and held amply sufficient to take the case to the jury on the question whether, or not, the execution of the note sued on was secured by fraud.

(Syllabus by Robertson, C.)

*Error from Oklahoma County Court; Sam Hooker, Judge.*

Action by Charles W. Edwards against Ed. F. Miller to recover $500 and interest, alleged to be due on a promissory note. Judgment for defendant. Plaintiff brings error. Affirmed.

*L. D. Mitchell,* for plaintiff in error.

*Geo. A. Matlack* and *Snyder, Owen & Lybrand,* for defendant in error.

Opinion by ROBERTSON, C. This action was begun September 28, 1908, in the county court of Oklahoma county, by Charles W. Edwards, plaintiff in error, hereinafter designated as plaintiff, against Ed. F. Miller, defendant in error, and herein-

after called defendant, to recover the sum of $500 with interest at 6 per cent. per annum from January 11, 1907, alleged to be due on a certain promissory note of that date, made payable to one Bruce Sims, and alleged to have been transferred in the ordinary course of business, before maturity, to the plaintiff in error. The defendant answered and admitted the execution of the note, but denied that plaintiff was the owner and holder thereof, and denied that said note had been transferred before maturity without notice of the outstanding equities which defendant had against said obligation, and alleged that said note was void on account of fraud and deceit on the part of the original payee. Plaintiff replied and contended that said note was negotiable; that the same was transferred to him before maturity, and was not subject to any equitable defenses defendant might have against the original payee. The cause was tried to a jury, and a general verdict was rendered in favor of defendant. Judgment was accordingly entered on said verdict; motion for new trial was filed, presented, overruled and exceptions taken, and plaintiff brings this appeal to reverse said judgment. The court below treated this note as an Illinois contract, and instructed the jury that as such, it was a negotiable instrument, and not subject to outstanding equities, or defenses, unless it had been transferred after its maturity, or with notice of the outstanding equities to the plaintiff in the case at the time the same was transferred to him, and instructed the jury that unless they believed from the evidence in the case that said note had been transferred after maturity, or with notice of the outstanding equities which defendant claims to have had against said note, they should find their verdict for the plaintiff for the amount sued on. The question, then, of assignment of the note before maturity became one of the material facts in the case, and evidence was introduced by both parties on the subject, and the jury by its general verdict found that the said note had not been assigned before maturity, and that the plaintiff took said note with notice of the equities which defendant claimed he was entitled to urge as matters of defense against the same.

The question was submitted to the jury, by the court, under proper instructions; there was a sharp conflict in the testimony on this particular point, and the jury by its general verdict found in favor of the defendant, on this, as well as on all other questions submitted, and it is a well-settled rule of this court that, where the evidence on a material fact is conflicting, this court will not review the same to ascertain where the weight lies, but if there is evidence reasonably tending to support the finding, such finding of the jury will not be disturbed by this court on appeal. *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; *Harrill v. Parkinson,* 27 Okla. 528, 112 Pac. 970; *Ellison v. Bank,* 27 Okla. 782, 117 Pac. 199.

On the original note which was introduced in evidence, appeared in pencil notation near the top, the words "Address, Oklahoma City, Ok.," and counsel for the plaintiff in error contends that the court erred in permitting this to go to the jury, and in permitting counsel for the defendant to call the jury's attention to the same. The record shows that the plaintiff himself testified that the note which was then before him, and which he was being interrogated about, was in the same condition then as when it was assigned to him. The pencil notation on the face of the note was competent evidence, a circumstance merely, to be sure, and there was no harm done by the court in permitting the note to be read to the jury, together with all the indorsements and notations thereon. It was the theory of the defendant that the assignment was fraudulent and was not made before maturity. The evidence discloses that Miller, the defendant, at the time said note was executed lived at Paris, Ill., and that the note was made at that place; that he continued to reside there until about the 23d or 24th of March, 1908; that he was in Paris, Ill., on January 11, 1908, the day the note became due; that he moved to Oklahoma City about the 24th of March, 1908, and had resided there since. Edwards, the plaintiff, as his counsel observes on page 25 of his brief, "inadvertently testified that the note bore the same marks and indorsements now as when he received it." If that is true, then the words "Oklahoma City, Ok.,"

in pencil were on the face of the note when he purchased it. The jury evidently believed the defendant, and necessarily found that the note had been sent by the original payee to the American National Bank, of Oklahoma City, for collection, and that it would not have been sent there had not the defendant lived there at the time, and that he did not move there until March 24, 1908, and that therefore, if the note bore the same indorsements at the time plaintiff purchased it as it bore at the time it was introduced in evidence at the trial, the words in pencil were on it when he bought it.

Counsel for plaintiff in his brief, alluding to this testimony of his client, says: ,

"This was plainly an oversight on his part, and I think an error on the part of the court in allowing the counsel to argue that the pencil marks were a part of the evidence in the case."

It may have been an oversight on the part of plaintiff to so testify. That we cannot tell, but it is in evidence and no effort was made to correct the statement or withdraw it from the consideration of the jury. Certainly it was proper to permit counsel to show it in his argument to the jury, just as any other fact or circumstance in the case might be shown. As was said heretofore, the question of assignment before maturity was one of the important and controlling questions of the case, and for the reasons hereinbefore stated, the court will not interfere with the finding of the jury on a material question of fact, especially when the testimony reasonably tends to support the findings as it does in this case. The jury, by its general verdict for the defendant, found that the note had been assigned after maturity, or with knowledge of the equities Miller had against Sims, and, this being true, then the defense of fraud and deceit were available to Miller, who, in his answer, had pleaded that prior to the execution of the note sued on, the said Bruce Sims had resided in Paris, Ill., and had resided there for many years, and had been well and favorably known to the defendant as an upright, honest, and fair-dealing citizen; that shortly before the date of the note sued on said Sims came to defendant and others in Paris and proposed the

organization of a mining company, and represented to defendant that he was an expert in mines and mining and mining properties, and that he had recently spent much time in the study of mines and mining in the lead and zinc fields in Missouri, and was thoroughly conversant with that field and the value of mines and mining properties there, and the ores and methods of operation peculiar to that district, and that said Bruce Sims, pursuant to the design to organize a mining company for the purpose of taking property in said field, falsely and fraudulently represented to the defendant and his associates that he (Sims) had an option to purchase a valuable piece of mining property near Joplin for $18,000, which property he falsely represented to be well worth said sum; that the said Sims falsely and fraudulently represented that there was a workable shaft on said property, and that by the expenditure of $200 in the development of said mine the same could be put on a paying basis and earn a handsome profit in 30 days; that owing to the distance of the defendant and his associates from the proposed mining field it was impracticable and well nigh impossible for them to visit said field where the mine was alleged to be located; that they were not practical mining men and had no knowledge of mining, but owing to the representations made by Sims that he was a practical mining expert and that he had just come from said field, this defendant and his associates relied upon and believed in the ability of the said Sims, and the representations he then and there made, and by virtue thereof and while the said Sims knew that said representations were false and fraudulent, and with the intent to deceive the confidence bestowed upon him by the said defendant and his said associates, as a means to accomplish his false purpose, did induce the associates of this defendant to organize a company known as the Hunter Mining Company, and to place in the hands of the said Sims $18,000, which the said Sims falsely and fraudulently represented would be necessary to purchase the said mining property, and the further sum of $2,000, which the said Sims agreed to use in the development of the mine; that in truth and in fact said representations so made by the said Sims were false

and untrue, and known by him to be false and untrue when made, and were made by the said Sims for the express purpose of deceiving defendant, and that defendant in consideration thereof was deceived, and did rely upon said false representations, and was thereby induced to and did execute the note sued on.

This stated a good defense to the note, provided the jury first found that the note had been assigned after maturity, or with knowledge to Edwards of the equities, which Miller claimed, against the obligation. It is a settled rule in this court that a general verdict or finding includes the finding of all facts necessary to constitute the claims of the parties in whose behalf the judgment was rendered, or, in other words, it is a finding on all the controverted facts in favor of one party and against the other. *De Vitt v. City of El Reno,* 28 Okla. 315, 114 Pac. 253; *First Nat'l Bank v. Arnold,* 28 Okla. 49, 113 Pac. 719, and cases cited.

We are therefore warranted in saying that the jury found that the note had been transferred after maturity, or, if before, then with knowledge of the existing equities between the parties, and that therefore Miller was entitled to his defense of fraud and deceit, etc., as pleaded in his answer.

This plea of the defendant in his answer, and issue joined thereon by reply of plaintiff, raised squarely the question of fraud and deceit, which was, with other questions of fact, properly submitted to the jury, under the instructions of the court, which were not objected to by the plaintiff in error; and where there is evidence tending reasonably to support the verdict of the jury, this court will not disturb such finding on appeal, nor search the evidence to determine where the weight lies. *Hobbs v. Smith* and other cases cited, *supra.* See, also, in support of such defense the following cases: *Gilpin v. Netograph Machine Co. et al.,* 25 Okla. 408, 108 Pac. 382, 29 L. R. A. (N. S.) 477; *Clark et al. v. O'Toole et al.,* 20 Okla. 319, 94 Pac. 547; *Prescott & Farrar v. Brown, infra,* 120 Pac. 991.

Finding no error in the record, the judgment of the county court of Oklahoma county should be affirmed.

By the Court:   It is so ordered.

All the Justices concur.