## ST. L. & S. F. R. CO. v. YOUNG.

No. 1366.    Opinion Filed January 9, 1912.

(120 Pac. 999.)

1. **EVIDENCE—Opinion Evidence—Value of Live Stock.** One witness testified that he was a farmer; had handled cattle for eighteen years; had experience in buying and selling and estimating value of cattle; and knew the value of cattle such as those in question; and testified that the cattle in question were worth from $50 to $75 per head. Another testified that he was a stockman, and had handled cattle for thirteen years, and had experience in buying and selling, and that he examined the cattle in question after they were injured, and that had it not been for the injuries they would have been worth from $40 to $65 per head. Held that, while perhaps not the best class of evidence obtainable on the subject, yet it was competent, and no error was committed in allowing said witnesses to testify; the weight and sufficiency of such evidence together with the credibility of the witnesses being matters to be determined by the jury under proper instructions by the court.

2. **APPEAL AND ERROR—Review—Sufficiency of Evidence.** Where there is some evidence tending reasonably to support the allegations of the petition, the issues should be submitted to the jury under proper instructions, and in such case the verdict will not be disturbed on appeal.

3. **CARRIERS—Live Stock Shipment—Notice of Injury.** A provision in a contract of shipment requiring, as a condition precedent to a recovery of damages to live stock, that the shipper will give notice in writing of the claim therefor, to some general officer or station agent, at the nearest station, before such stock is removed or before such stock is allowed to be mingled with other stock, such notice to be served within one day after delivery of stock at destination, is a reasonable and valid provision, and will be upheld by the courts, but a substantial compliance with the terms of such provision will be sufficient.

(Syllabus by Robertson, C.)

*Error from Kiowa County Court; J. W. Mansell, Judge.*

Action by T. H. Young against the St. Louis & San Francisco Railroad Company, to recover damages on account of negligence in shipping cattle. Judgment for the plaintiff, and defendant brings error. Affirmed.

This action was begun in the county court of Kiowa county, on the 25th day of February, 1909, by T. H. Young, hereinafter designated as plaintiff, against the St. Louis & San Francisco Railroad Company, a corporation, to recover $635, as damages for alleged injuries to certain live stock, shipped over its road. It appears that on the 21st day of May, 1907, plaintiff shipped over defendant's railroad from Vernon, Tex., to Snyder, Okla., a distance of forty or fifty miles, thirty-five head of cattle. The contract of shipment was in writing, and is attached to plaintiff's petition as an exhibit and made a part thereof. Therein the agreed value of said cattle was fixed at $30 per head, and the reasonable value of the entire shipment at $1,050. It also appears that defendant agreed to safely transport said cattle to the agreed destination in consideration of a stated price, which had theretofore been paid the railroad company by the plaintiff; that defendant did not comply with its contract, but was careless and negligent in the handling of said cattle, and as a result thereof eight head of said shipment died, four dying the day following their arrival at Snyder, and four others within a short period of time thereafter; that by reason of the death of the eight head of cattle plaintiff was damaged $240; that one cow was damaged $25; that all the others were more or less injured, and that plaintiff's time in caring for and looking after said cattle, occasioned by the negligence of the railroad company, was of the reasonable value of $100—making a total of $635, for which plaintiff prayed judgment. Defendant answered by general denial, and also alleged that by virtue of the contract of shipment set up in plaintiff's petition as Exhibit A, plaintiff agreed to give a written notice to the company within one day after the delivery of the cattle at the point of destination, and before the cattle were removed from the place of destination, showing the extent and

character of any damages which they may have received, and that no such notice had been given, and the company by reason of such failure was not liable for any damages; and as a further defense the railroad company alleged that by reason of a mistake of one of its agents there had been an undercharge on the freight of said car in the sum of $23, for which it prayed judgment against plaintiff. Plaintiff replied by general denial, and further alleged full compliance with the terms of the contract set up in his petition. Trial was had to a jury, and a verdict was returned in favor of the plaintiff in the sum of $487. Motion for new trial was made, overruled, and judgment entered on the verdict; time was given to make and serve a case for this court; and the railroad company prosecutes this appeal to reverse said judgment.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

*O. B. Riegel,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). Plaintiff in error, hereinafter called the railroad company, relies upon five assignments of error for reversal, the first being: "The court erred in admitting incompetent, irrelevant, and immaterial testimony in said cause, over the objections of the defendant." The record shows, without question, that the cattle were delivered to the railroad company, at Vernon, Tex., in good condition. That they left there about 9 o'clock a. m. and arrived at Snyder about noon the same day; that while the car was standing stationary on the main track at Frederick, the engine being engaged in switching, a freight car escaped from the train crew and ran wild down the track and struck the train, which contained the car occupied by the cattle, with terrific force, knocking the cattle down and injuring them in various ways, such as, "horns knocked off, shoulders out of place, breasts bruised, ribs broken, hind parts crippled, legs dragging, briskets mashed, abrasions of the skin," etc. (Record, pp. 27, 28, 29). The evidence further discloses that by reason of such injuries all the

cattle (thirty-five head) were more or less injured, while eight head died, and one cow lost a calf. The fact of the injury, as well as the reasons thereof, are undisputed.

It became necessary for plaintiff to prove the value of the cattle, both before and after the accident, and for that purpose T. H. Young, the plaintiff, testified that he was a farmer, and had worked with cattle on a range for eighteen years, and had experience in buying and selling cattle and estimating their value, and knew the value of the cattle in question; that they were worth from $50 to $75 per head before they were injured; that eight head died as a result of the injuries so received, making as to them, a total loss; that all were badly bruised, and several permanently crippled. He testified with great particularity as to the nature and character of the injuries. Mr. Ferrell, a witness for the plaintiff, testified that he was a stockman, and had handled cattle for thirteen years, and was experienced in the buying, selling, and handling of the same; that he examined the cattle in question after the injuries, and that had it not been for such injuries the cattle would be worth from $40 to $65 per head, but, as delivered, twelve head were worth not to exceed $5 each, and the others not to exceed $15 per head. Another witness, J. W. Chitwood, testified that he lived at Vernon, Tex., and was engaged in handling Jersey cows such as these in question; that he had seen twelve head of the cattle in question, and knew that they were worth from $30 to $50 per head, at Vernon, Tex. The railroad company complains that the testimony of the witness Chitwood should be stricken because he testified of the value of the cattle at Vernon, Tex., and not at Snyder. This phase of the case was properly cared for by the court in his instructions to the jury, in which they were told that in determining plaintiff's damage they should not consider any evidence as to the market value of the cattle in question at Vernon, Tex., but that they might consider the physical condition of said cattle when they were received by the defendant at Vernon, Tex., and there was evidence introduced showing the condition of the cattle at the time they were delivered to the company at Vernon, Tex. The railroad company did not attempt seriously to con-

tradict this testimony as to the value of the cattle, but relied seemingly upon the incompetency of the witnesses to testify as to value. Our courts have passed upon the admissibility of this character of testimony, and have held that such witnesses as those who testified were competent and that such testimony was admissible. In *C., O. & G. R. R. Co. v. Deperade,* 12 Okla. 367, 71 Pac. 629, it was held that a person who had been a farmer ·for twenty years was competent to testify as to the value of animals killed by the railroad company, and that the weight of evidence being ·a matter to be determined by the jury, it was for the jury to give the proper credit to the testimony of the witness. See, also, *Filson v. Territory,* 11 Okla. 351, 67 Pac. 473, and cases therein cited; Lawson on Expert and Opinion Evidence, p. 15. In this class of cases the qualifications of witnesses is largely a matter of discretion for the trial court. Without a doubt there was some competent evidence before the jury on the subject of the value of the cattle before and after the injuries complained of. ᐧ The court covered this phase of the case by fair and comprehensive instructions. The evidence as to the value and damages, while perhaps not as strong and conclusive as it might have been, presented controverted questions of fact which were submitted to the jury under proper instructions, and we cannot say there was no competent evidence before the jury on the subject. There was some, without a doubt.

In such case it is proper to submit the issue to a jury, and it is not the policy of this court to disturb the verdict on appeal. *Edwards v. Miller, infra,* 120 Pac. 996; *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; *Harrill v. Parkinson,* 27 Okla. 528, 112 Pac. 970; *Ellison v. Bank,* 27 Okla. 782, 117 Pac. 199.

The next assignment of error to be noticed is that the court erred in overruling defendant's demurrer to plaintiff's evidence. The main point relied upon by the railroad company under this assignment is that there was no evidence offered showing a compliance with the terms of the written contract of shipment, in so far as a written notice for damages having been presented to the company within one day after the arrival of the stock at its

destination. That such a provision in a contract of this character is reasonable and binding upon the parties we do not think there can be any question, but we do not agree with the conclusion of counsel for the railroad company that there was no compliance with the terms of the contract in this particular. The evidence shows that the plaintiff, as soon as the shipment arrived at Snyder, unloaded the cattle in the company's stock pen, and immediately went to the depot and informed the agent of the damage done the cattle, and told him that he wanted to put in a claim for damages; that the agent said, "All right"; that the agent, in company with plaintiff and other witnesses, returned to the stock pen and examined the cattle; and that they talked about what it would be and finally decided upon the amount of damages plaintiff claimed; that the agent took down the number and description of each animal and the nature of the injury, together with the amount of the damages, making an itemized statement; that said statement was in writing; that the agent retained the same. In corroboration of this testimony the witness Hellwig testified that on the day of the arrival of the cattle, to wit, May 21, 1907, he was present at the stock pen, and overheard a conversation between Mr. Young and the agent in which the plaintiff, Mr. Young, said that he would not accept those cattle in a mangled condition, and that he claimed damages and insisted on his claim being filed before he would accept the cattle; that he saw the agent make a list of the cattle and their condition at the time, at Mr. Young's request; that said list was in writing; that the agent had it in his hand and walked to the depot with it; that he saw the paper and what it contained; that he knew it was a claim for damages in the shipment of stock; that he accompanied the agent to the depot; that the agent still had the claim in his hand at the depot; that he conversed with the agent with reference to what he was going to do with it, and that the agent said he "would send it to the company; that it was undoubtedly a just and meritorious claim."

This, without doubt, is a substantial compliance with the terms of the contract complained of by the railroad company. The only purpose of such a provision in a contract is to compel

the shippers to immediately inform the company of alleged damages, in order that proper steps may be taken to protect the parties and to prevent fraud. The reason for this rule has been fully met and complied with in the present case, and surely no reasonable person could expect a more full and complete compliance with the requirements of the contract than was performed by the plaintiff in the case at bar, and there is no merit in the contention of the railroad company in this particular, but there was, to say the least, a substantial compliance by the plaintiff with the requirements of the contract of shipment. There was no effort on the part of any one to modify, amend or waive the provisions of the contract. On the contrary, a substantial compliance with its exact terms was shown by plaintiff.

The next assignment of error complains of the refusal of the trial court to give a certain instruction. No effort has been made to comply with rule 25 of this court (20 Okla. xii, 95 Pac. viii), in this connection, and therefore it will not be considered. Nor is there any argument made or authorities cited in support of this alleged error; hence the company is deemed to have waived its right to have the same considered here.

The next assignment of error deals with the ruling of the court in refusing to grant a new trial and the same reasons, heretofore assigned and considered, are urged by counsel in this behalf. The jury found, as shown by its verdict, for the plaintiff in the sum of $510, and for the defendant on its counterclaim in the sum of $23, making a total of $487 for plaintiff. The verdict was right. We find no error in the record of sufficient importance to warrant an interference; on the contrary, we are satisfied that substantial justice has been done, and that the judgment of the county court of Kiowa county should, in all things, be affirmed.

By the Court: It is so ordered.

· All the Justices concur.